UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:



FILED BY_____ D.C.

OCT 1 9 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

ROBERT DOYLE,

     Plaintiff,

vs.

SCOTT ISRAEL IN CAPACITY AS
BROWARD COUNTY SHERIFF; BRENDA
D. FORMAN, IN CAPACITY AS
BROWARD COUNTY CLERK OF
COURTS; WINSTON R. BLACKMAN; JOE
ESCOBITO; GARY R. BROWN; AND
WILLIAM WESOLOWSKI,

     Defendants.

_____/

## COMPLAINT

## PLAINTIFF DEMANDS TRIAL BY JURY

### Introductory Statement

This is a civil action seeking money damages in excess of Fifteen Thousand Dollars ($15,000.00),

exclusive of costs, interest, and attorney's fees against **SCOTT ISRAEL IN CAPACITY AS**

**BROWARD COUNTY SHERIFF; BRENDA D. FORMAN, IN CAPACITY AS CLERK OF**

**COURTS OF BROWARD COUNTY, FLORIDA; WINSTON R. BLACKMAN, individually;**

**JOE ESCOBITO, individually; GARY R. BROWN, individually; and WILLIAM**

**WESOLOWSKI, individually.**

### Jurisdiction and Venue

    1.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988; and the First, Fourth,

and Fourteenth Amendments to the United States Constitution.

2.      The United States District for the Southern District of Florida has jurisdiction of this action under 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

3.      The Plaintiff further invokes the supplemental jurisdiction of the United States District Court to hear pendant Florida claims arising under State law pursuant to 28 U.S.C. § 1367(a).All relevant events occurred in Broward County, Florida located within the Southern District of Florida.

Parties

4.      The Plaintiff, Robert Doyle, was, at all relevant times, a resident of Broward County Florida.

5.      Doyle is an attorney licensed to practice law in the State of New York.The Defendant, Scott Israel, is the elected Sheriff of Broward County, Florida, and is the chief executive of the Broward Sheriff's Office ("BSO").

6.      The address of the BSO is 2601 W. Broward Blvd. Ft. Lauderdale, FL 33312.

7.      The Defendant Brenda D. Forman, is the Clerk of Courts of Broward County.

8.      Brenda D. Forman's office is located in the main court house of Broward County at 201 S.E. 6 th Street, Fort Lauderdale, Florida, 33301.

9.      The Defendant, Winston R. Blackman, at all relevant times,was a deputy of the BSO, working at the SSCH.

10.     The current residential address of Blackman is presently unknown.

11.     The Defendant, Joe Escobito, at all relevant times, was an employee of and at the SSCH.

12.     The current residential address of Escobito is presently unknown.

13.     The Defendant, Gary R. Brown, at all relevant times, was a deputy of the BSO.

14.     The current residential address of Brown is presently unknown.

15.     The Defendant, William Wesolowski, at all relevant times, was a deputy of the BSO.

16.     The current residential address of Wesolowski is presently unknown.

17.     At all relevant times, Defendants, Blackman, Brown, Wesolowski, were acting under color of law as deputies of the BSO.

18.     Plaintiff sues Defendants Escobito, Blackman, Brown, and Wesolowski, in their individual capacities as well as their capacities as employees of their respective employers.

Statement of Facts

19.     On October 31, 2013, Doyle attempted to file a law suit in the South Satellite Court House of the State Court of Florida, in Broward County (the "SSCH").

20.     The clerk serving Doyle (the "Clerk") told Doyle that she could not file the case that day because she had to first get approval from the head court in downtown Florida in order to accept Doyle's petition to file the case *in forma pauperis*.

21.     Doyle, at that point, informed the Clerk that he wanted to file the case that day.

22.     The Clerk then asked Doyle if he wanted to speak to her supervisor.

23.     Doyle replied "alright".

24.     The Clerk then instructed Doyle to sit down and wait for the supervisor.

25.     Doyle sat down on a chair located in the waiting area of the Clerk's office.

26.     About five minutes later, a man came to where Doyle was seated and began to scream at Doyle in an extremely loud voice.

27.     Doyle later discovered that this man was Joe Escobito, a supervisor in the Clerk's office at the SSCH.

28.     At this time, Escobito screamed at Doyle so loudly that Doyle was unable to understand what Escobito was saying.

29.     At this time, Escobito stood over Doyle and screamed at him extremely loudly and all four of Escobito's limbs were flailing.

30.     Due to Escobito's aforementioned actions Doyle feared for his physical safety.

31.     At no time during his interaction with Escobito did Doyle leave his seat.

32.     Escobito never introduced himself to Doyle.

33.     Escobito never asked Doyle for his name.

34.     Escobito never asked Doyle what he wanted to do at the Clerk's office of the SSCH.

35.     After Escobito calmed down, Doyle told him "I'm just trying to file my papers".

36.     To Doyle's aforementioned statement, Escobito replied "we are going to take your papers".

37.     To Escobito's aforementioned statement Doyle said "good, thank you".

38.     Doyle then approached the Clerk's window.

39.     Doyle said nothing to the Clerk at that point.

40.     At that point, the Clerk said "we're not taking your papers".At that point, Doyle said to Escobito "she said she's not taking my papers".At that point, Escobito, again began to scream unintelligibly.Escobito then went behind the counter in the clerk's office.

41.     Very shortly thereafter, Blackman entered the clerk's office.

42.     At that point, Blackman approached a man at random and said to him "file your papers tomorrow".

43.     At that point, Escobito said to Blackman "no, not him, him", and pointed to Doyle.

44.     At that Point, Blackman said to Doyle "file your papers tomorrow".

45.     Doyle replied to Blackman's aforementioned statement "why?".

46.     Blackman then responded to Doyle's question "because I told you to".

47.     Doyle again asked Blackman "why?".

48.     Blackman replied "you're not going to file your papers today".

49.     Blackman began to get belligerent with Doyle.

50.     At that point, Doyle suggested to Blackman that they step outside of the clerk's office to discuss the matter.

51.     Doyle and Blackman then stepped just outside the clerk's office.

52.     Doyle explained to Blackman what had happened.

53.     Blackman again told Doyle that he was not going to allow him to file his papers that day.

54.     Doyle informed Blackman that he had the right to file his papers.

55.     Doyle also informed Blackman that Escobito told him that the clerk's office would accept his papers.

56.     Blackman again told Doyle that he, Blackman, was not going to allow him to file his papers.

57.     Doyle told Blackman "okay, I'll go to Administrator's office and get permission from him.

58.     At that point, Blackman said to Doyle "no, you're not allowed to see him".

59.     Doyle replied "why not?"

60.     Blackman then responded "cause that's the way it is".

61.     Doyle almost started to speak and Blackman reacted by demanding Doyle's driver's license.

62.     Doyle protested, saying, "you don't have the right to make me show you my driver's license".

63.   Blackman said "yes, I do, I arrest people for refusing to show me their driver's licenses".

64.   At that point Doyle handed Blackman his driver's license.

65.   Blackman then used a walkie talkie to speak to a man.

66.   Blackman read information from Doyle's license to that man.

67.   Blackman prevented Doyle from leaving the immediate premises by threat of force, false arrest, andretention of Doyle's driver's license.

68.   After Blackman finished speaking to that man, he returned Doyle's licence to him.

69.   Doyle then tried to go to the BSO counter located in the lobby of the SSCH.

70.   Blackman asked Doyle what he was doing.

71.   Doyle said he was going to speak to the BSO supervisor.

72.   Blackman said "you're not speaking to the supervisor, you're leaving".

73.   At that point Doyle left the SSCH and never returned.

74.   On November 4, 2013, Doyle went to BSO headquarters to complain about Blackman.

75.   At that time, Doyle made his complaint verbally to Brown, who was, at that time, a Sergeant in the BSO.

76.   Brown took hand-written notes of Doyle's complaint on a legal pad.

77.   Doyle tried to obtain a copy or otherwise see these hand-written notes but was told they no longer existed.

78.   Doyle told the facts to Brown, as stated *supra*.

79.   Brown spent much of his discussion with Doyle arguing with Doyle, trying to convince Doyle that Blackman acted appropriately.

80.     Doyle told Brown that he was a lawyer.

81.     Doyle told Brown that he was licensed to practice in New York only.

82.     Doyle expressly told Brown that he was not licensed to practice in Florida.

83.     Brown made a written report of Doyle's complaint (the "Written Report").

84.     The Written Report contains many errors.

85.     Many of the aforementioned errors were intentionally made by Brown in order to discredit Doyle's complaint.

86.     The Written Report falsely states that Doyle claimed that SSCH supervisor threatened to call securtiy [on Doyle].

87.     Doyle never told Brown that anyone threatened to call security.

88.     The Written Report falsely states that Doyle claimed that Blackman threatened to arrest him if he did not leave [the building].

89.     To the contrary, Doyle told Brown that Blackman threatened to arrest him if he did not give Blackman his driver's license.

90.     The Written Report states that Brown conducted a search and determined that Doyle has once been arrested for 'Resisting Without and Trespass'.

91.     The Written Report contains no information about the fact that the charges relating to the aforementioned arrest were dropped.

92.     If Brown knew that Doyle had been arrested then he also knew that the charges had been dropped.

93.     If Brown had done the research the Written Report indicates he did then he also knew that the prosecutor in the criminal case against Doyle dropped the charges because he believed that 'no jury could reasonably believe the charges'.

94.     The Written Report states that Brown found a number of attorneys named Robert Doyle licenced in Florida, and indicates that none of them are the Plaintiff.

95.     Since Brown knew the Plaintiff was not a licensed attorney in Florida, Brown's statement that the Plaintiff was not licensed in Florida proves that Brown's conduct of Doyle's complaint was fraudulent and intended only to discredit Doyle.

96.     The Written Report states that Brown spoke to Rex Rosenberger, the Administrator of the SSCH.

97.     The Written Report states that Rosenberger told Brown that 'Doyle was in the wrong'.

98.     Doyle spoke with Rosenberger several times by telephone and Rosenberger repeatedly denied ever making any such statement to Brown.

99.     The Written Report states that Rosenberger spoke to a 'citizen who was in the lobby on both days, and that person supported the claim of the staff acting properly in the face of Doyle's conduct'.

100.    The aforementioned statement in the Written Report was created by Brown to discredit Doyle; Rosenberger never made any such statement to Brown.

101.    The last paragraph of the Written report is a complete falsehood (with the possible exception of Brown having spoken to Escobido).

102.    The claims of the last paragraph of the Written Report are all lies, fabricated by either Brown or Escobito.

103.    Brown refused to give Doyle the name of the 'citizen' mentioned in the Written Report, stating 'he does not want to get involved'.

104.    It is obvious from the wording of the Written Report that Brown tried to discredit Doyle, presumably to protect Blackman.

105.    Doyle complained to the BSO that Brown did not conduct a legitimate investigation of his complaints against Blackman.

106.    Defendant Wesolowski wrote a letter to Doyle, dated November 19, 2013 ("Wesolowski's Letter").

107.    Wesolowski's Letter falsely stated that 'no policy violations have been identified.

108.    Clearly, based solely on the wording of the Written Report, let alone Doyle's complaint, Brown did not conduct a genuine investigation, but only attempted to protect Blackman, his fellow BSO deputy.

109.    Since this was obvious to anyone who read the Written Report, Wesolowski's Letter was fraudulent and obviously intended to deny Doyle his legal rights under both U.S. law and Florida law.

110.    Doyle timely filed notice with the BSO, the Broward Clerk of Courts, and the Department of Financial Services, as required by F.S. §768.28.

## CAUSES OF ACTION COGNIZABLE UNDER 42 U.S.C. § 1983

### COUNT I

**Threatened False Arrest/Retaliation For Free Speech in Violation of Plaintiff's
First and Fourteenth Amendments' Rights Under the United States Constitution
and Article One § Four of the Florida Constitution
(Against Defendant Blackman and, by Respondeat Superior, Defendant Scott Israel)**

111.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint. Blackman threatened Doyle with false arrest because Doyle told Blackman that Doyle was not legally required to show Blackman Doyle's driver's license.

112.    At all times material hereto, it was clearly established that "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is of the principal

characteristics by which we distinguish a free nation from a police state". *City of Houston v. Hill*, 107 S.Ct. 2502, 2510 (1987).

113.    At all times material hereto, it was clearly established that speech is protected under the First Amendment as long it does not physically obstruct the officer and is not "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest". *Id.* at 2009-10.

114.    The conduct of Defendant Blackman towards Plaintiff, as set forth herein, was in retaliation for Plaintiff's protected speech, objectively and reasonable, and in violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 to be free from arrest in the absence of probable cause. *Bennett v. Hendricks*, 423 F.3d 1247, 1255-56 (11th Cir. 2005).

115.    It was clearly established law at the time of the threatened arrest of Plaintiff that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers". *City of Houston v. Hill*, 107 S.Ct. 2502, 2509 (1987).

116.    It was clearly established law at the time of Plaintiff's arrest that "the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state". *Id* at 2510.

117.    The threatened arrest of Plaintiff by Defendant Blackman occurred in the absence of probable cause that Plaintiff committed any criminal offense, and was likely to deter a person of ordinary firmness from the exercise of First Amendment rights. The conduct of Defendant Blackman towards Plaintiff constitutes unlawful retaliation in violation of Plaintiff's clearly established rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

118.    Blackman's conduct was also in clear violation of Article One § Four of the Florida Constitution.

119.    As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

120.    As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

121.    Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

122.    Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

    a) Judgment for compensatory damages in excess of $15,000.00;
    b) Judgment for exemplary damages;
    c) Costs of suit;
    d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
    e) Trial by jury as to all issues so triable; and
    f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II

**Violation of Plaintiff's Right to Assemble Under the First Amendment to the United States Constitution and Article One, § Five, of the Florida Constitution (Against Defendant Blackman and, by Respondeat Superior, Scott Israel)**

123.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

124.    Defendant Blackman physically, and with the threat of arrest, and under the power of his office, prevented Doyle from remaining in the SSCH.

125.    Blackman had no legal reason, nor lawful authority to prevent Doyle from remaining in the SSCH.

126.    Blackman's prevention of Doyle from remaining in the SSCH was in retaliation for Doyle's statement to Blackman that Doyle was not legally required to show Blackman his driver's license.

127.    The violation of Doyle's right to assemble in the SSCH occurred in the absence of probable cause that Plaintiff committed any criminal offense, or was likely to do so.

128.    The conduct of Defendant Blackman towards Plaintiff constitutes unlawful retaliation in violation of Plaintiff's clearly established rights under the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

129.    Blackman's conduct was also in clear violation of Article One § Five of the Florida Constitution.

130.    As a direct and proximate result of the acts described above, in violation of 42 U.S.C. § 1983, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will..

131.    As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

132.    Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

133.    Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

    a) Judgment for compensatory damages in excess of $15,000.00;
    b) Judgment for exemplary damages;
    c) Costs of suit;
    d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
    e) Trial by jury as to all issues so triable; and
    f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III

**Violation of Plaintiff's Right to Be Free From Unreasonable Searches and
Seizures Under the Fourth Amendment to the United States Constitution
and Article One § Twelve of the Florida Constitution
(Against Defendants Blackman and, by Respondeat Superior, Defendant Israel)**

134.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations
in this Complaint.

135.    Blackman had no legal reason, nor lawful authority to demand that Doyle surrender
his driver's license.

136.    Blackman's demand that Doyle surrender his driver's licence, under threat of false
arrest, was in retaliation for Doyle's statement to Blackman that Doyle had the legal right to file his
law suit in the SSCH on the day in question of the events of this suit.

137.    The violation of Doyle's right to be free of unreasonable searches and seizures was
in the absence of probable cause that Plaintiff committed any criminal offense, or was likely to do
so.

138.    The conduct of Defendant Blackman towards Plaintiff constitutes unlawful retaliation
in violation of Plaintiff's clearly established rights under the Fourth Amendment, and 42 U.S.C. §
1983.

139.    Blackman's conduct was also in clear violation of Article One § Twelve of the
Florida Constitution.

140.    As a direct and proximate result of the acts described above, in violation of 42 U.S.C.
§ 1983, Plaintiff has suffered grievously, both emotionally and physically, has been brought into
public scandal, and with great humiliation, mental suffering and damaged reputation, including
business reputation/good will..

141.    As a further, direct and proximate result of the conduct of Defendant Blackman,

Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

142.    Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

143.    Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

> a) Judgment for compensatory damages in excess of $15,000.00;
> b) Judgment for exemplary damages;
> c) Costs of suit;
> d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
> e) Trial by jury as to all issues so triable; and
> f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV

### Violation of Plaintiff's Right to Access to the Courts Under
### Article One § Twenty One of the Florida Constitution
### (Against Defendant Blackman and, by Respondeat Superior, Defendant Israel)

144.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations

in this Complaint.

145.    Defendant Blackman physically, and with the threat of arrest, and under the power

of his office, prevented Doyle from filing a law suit on October 31, 2013 at the SSCH

146.    Blackman had no legal reason, nor lawful authority, to prevent Doyle from filing a

law suit.

147.    Blackman's prevention of Doyle from filing a law suit violated Article One § Twenty

One of the Florida Constitution, which states: "The courts shall be open to every person for redress

of any injury, and justice shall be administered without sale, denial or delay".

148.    The violation of Plaintiff's right to access to the courts was in the absence of probable

cause that Plaintiff committed any criminal offense, or was likely to do so.

149.     As a direct and proximate result of the acts described above, in violation of Article One § Twenty One of the Florida Constitution, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

150.     As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

151.     Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

152.     Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

    a) Judgment for compensatory damages in excess of $15,000.00;
    b) Judgment for exemplary damages;
    c) Costs of suit;
    d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
    e) Trial by jury as to all issues so triable; and
    f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V

**Violation of Plaintiff's Right to Privacy Under Article
One § Twenty Three of the Florida Constitution
(Against Defendants Blackman and, by Respondeat Superior, Defendant Israel)**

153.     Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

154.     Defendant Blackman physically, and with the threat of arrest, and under the power of his office, forced Plaintiff to surrender his driver's license.

155.     Defendant Blackman read and transmitted the information from Plaintiff's license to a third party, who likely transmitted it to a fourth party.

156.     Blackman had no legal reason, nor lawful authority, to force Plaintiff to surrender his driver's licence and read the information contained thereon.

157.   Blackman had no legal reason, nor lawful authority, to transmit the information contained on Plaintiff's driver's licence to a third person.

158.   Blackman's reading of and transmission of the information contained on Plaintiff's driver's license violated Article One § Twenty Three of the Florida Constitution, which states:"Every natural person has the right to be let alone and free from governmental intrusion into the persons private life".

159.   The violation of Plaintiff's right to privacy was in the absence of probable cause that Plaintiff committed any criminal offense, or was likely to do so.

160.   As a direct and proximate result of the acts described above, in violation of Article One § Twenty Three of the Florida Constitution, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

161.   As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

162.   Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

163.   Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

    a) Judgment for compensatory damages in excess of $15,000.00;
    b) Judgment for exemplary damages;
    c) Costs of suit;
    d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
    e) Trial by jury as to all issues so triable; and
    f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VI

**Violation of Florida Statute Title X § 112.533**
**(Against Defendants Brown, Wesolowski, and by Respondeat Superior, Israel)**

164.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

Brown's Written Report and Wesolowski's Letter are each investigative reports (collectively "the Investigative Reports") within the meaning of Florida Statute Title X § 112.533 (1)(a).

165.    Florida Statute'Title X § 112.533 requires that all Investigative Reports contain a verification.

166.    The Investigative Reports do not contain the verifications as required by Florida Statute Title X § 112.533 (1)(a), 1., and 2.

167.    Defendants Brown and Wesolowski likely refrained from verifying their respective Investigative Reports in order to prevent themselves from being subject to the legal penalties of perjury.

168.    As a direct and proximate result of the acts described above, in violation of Florida Statute Title X § 112.533, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

169.    As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

170.    Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

171.    Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

     a) Judgment for compensatory damages in excess of $15,000.00;
     b) Judgment for exemplary damages;
     c) Costs of suit;
     d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
     e) Trial by jury as to all issues so triable; and
     f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VII

**Criminal False Imprisonment in Violation of Florida Statute Title XLVI § 787.02**
**(Against Defendant Blackman, and by Respondeat Superior, Defendant Israel)**

172.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

173.    Defendant committed the crime of false imprisonment in violation of Florida Statute Title XLVI § 787.02.

174.    Violation of Florida Statute Title XLVI § 787.02 is a third degree felony.

175.    As a direct and proximate result of the acts described above, in violation of Florida Statute Title XLVI § 787.02, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

176.    As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

177.    Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

178.    Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

   a) Judgment for compensatory damages in excess of $15,000.00;
   b) Judgment for exemplary damages;
   c) Costs of suit;
   d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
   e) Trial by jury as to all issues so triable; and
   f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VIII

**Violation of Florida Statute Title XLVI § 838.022**
**(Against Defendants Brown and, by Respondeat Superior, Defendant Israel)**

179.     Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

180.     Defendant Brown stated many falsehoods in his written report, as enumerated in the FACTS section herein, *supra.*

181.     Florida Statute Title XLVI § 838.022 states, in part, "[i]t is unlawful for a public servant . . . to knowingly and intentionally obtain a benefit for any person or to cause unlawful harm to another, by (a) [f]sifying . . . any official record or official document".

182.     The Written Report is an official record under the aforementioned statute.

183.     The falsehoods made by Defendant Brown in his Written Report were made intentionally and knowingly and with the intent to assist Defendant Blackman, his fellow deputy.

184.     The aforementioned knowing falsehoods made by Brown caused unlawful harm to the Plaintiff because it prevented the Plaintiff from redressing his complaints against Defendant Blackman.

185.     As a direct and proximate result of the acts described above, in violation of Florida Statute Title XLVI § 838.022, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

186.     As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

187.     Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

188.     Defendant Israel is responsible for Blackman's actions by *respondeat superior.*

WHEREFORE, Plaintiff prays:

    a) Judgment for compensatory damages in excess of $15,000.00;
    b) Judgment for exemplary damages;

c) Costs of suit;

d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;

e) Trial by jury as to all issues so triable; and

f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IX

### Violation of Florida Statute Title XLVI § 777.03
### (Against Defendants Brown, Wesolowski, and, by Respondeat Superior, Defendant Israel)

189.    Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

190.    Florida Statute Title XLVI § 777.03(1)(a) states, in relevant part, "[a]ny person . . . who maintains or assists the principal or an accessory before the fact, or gives the offender any other aid, knowing that the offender had committed a crime and such crime was a third degree felony, or had been an accessory thereto before the fact, with the intent that the offender avoids or escapes detection, arrest, trial, or punishment, is an accessory after the fact".

191.    Brown knew that Blackman had falsely and unlawfully imprisoned Doyle by forcing Doyle to surrender his driver's license.

192.    Wesolowski knew, or should have known, that Blackman had falsely and unlawfully imprisoned Doyle by forcing Doyle to surrender his driver's license, because Wesolowski's Letter indicated that he had reviewed the case material, which included the Written Report.

193.    Brown gave Blackman aid in avoiding punishment for his aforementioned felonious false imprisonment of Doyle by intentionally falsifying the Written Report and falsely trying to discredit Doyle.

194.    Wesolowski gave Blackman aid in avoiding punishment for his aforementioned felonious false imprisonment of Doyle by falsely dismissing Doyle's complaint that Brown did not conduct a legitimate investigation of his complaints against Blackman.

195.     If Wesolowski had truly conducted an investigation of Brown's investigation of Doyle's complaints against Blackman then Wesolowski would have read Brown's Written Report and it obvious to anyone who reads said report that it is fraudulent and an obvious and false attempt to discredit Doyle.

196.     Both Brown and Wesolowski are each guilty of a third degree felony by virtue of their violation of Florida Statute Title XLVI § 777.03(1)(a).

197.     As a direct and proximate result of the acts described above, in violation of Florida Statute Title  XLVI § 777.03(1)(a), Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

198.     As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

199.     Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

200.     Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

   a) Judgment for compensatory damages in excess of $15,000.00;
   b) Judgment for exemplary damages;
   c) Costs of suit;
   d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
   e) Trial by jury as to all issues so triable; and
   f) Such other relief as this Honorable Court may deem just and appropriate.

## **COUNT X**

**Assault in Violation of Florida Statute Title XLVI § 784.011**
**(Against Defendant Escobito, and, by Respondeat Superior, Defendant Forman)**

201.     Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

202.    Defendant Escobito as described in the Facts section, *supra*, committed criminal assault against Doyle, in violation of Florida Statute Title XLVI § 784.011.

203.    By virtue of his violation of Florida Statute Title XLVI § 784.011, Escobito committed a misdemeanor in the second degree.

204.    As a direct and proximate result of the acts described above, in violation of Florida Statute Title XLVI § 784.011, Plaintiff has suffered grievously, both emotionally and physically, has been brought into public scandal, and with great humiliation, mental suffering and damaged reputation, including business reputation/good will.

205.    As a further, direct and proximate result of the conduct of Defendant Blackman, Plaintiff suffered loss of his liberty and freedom, and suffered mental anguish.

206.    Plaintiff's losses are permanent, in violation of Plaintiff's civil rights.

207.    Defendant Israel is responsible for Blackman's actions by *respondeat superior*.

WHEREFORE, Plaintiff prays:

    a) Judgment for compensatory damages in excess of $15,000.00;
    b) Judgment for exemplary damages;
    c) Costs of suit;
    d) Reasonable attorney's fees, pursuant to 42 U.S.C.§ 1988;
    e) Trial by jury as to all issues so triable; and
    f) Such other relief as this Honorable Court may deem just and appropriate.

WHEREFORE, PLAINTIFF PRAYS:

    a)      Judgment for compensatory damages in excess of $15,000.00;

    b)      Judgment for exemplary damages;

    c)      Costs of suit;

    d)      Trial by jury as to all issues so triable; and

    e)      Such other and further relief as this Honorable Court deems just, appropriate, and equitable.

Dated: October 10, 2017

Respectfully submitted,

Robert Doyle, Esq.
*Pro Se*
26 Netcong Heights, Apt. #9
Netcong, NJ 07857
(646) 434-7539

Robert Doyle, Esq.
26 Netcong Heights, Apt. #9
Netcong, NJ 07857

  

U.S. POSTAGE
PAID
SUCCASUNNA, I
07876
OCT 18 17
AMOUNT

$2.03
R2304M110667-0

1000          33301

United States Court House
Southern District of Florida
299 East Broward Boulevard
Fort Lauderdale, FL 33301

**ATTN: CLERK'S OFFICE**